UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BIOCRYST PHARMACEUTICALS, INC. | }<br>}<br>} |
| Plaintiff, | }<br>}   CASE NO. CV-96-B-2695-S |
| v. | }<br>} |
| HAROLD C. WEGNER, et al., | }<br>} |
| Defendants. | } |

FILED
97 SEP 22 PM 3:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 22 1997

## MEMORANDUM OPINION

Currently before the court are the Motions to Dismiss for lack of personal jurisdiction filed by defendants Harold C. Wegner, Herbert I. Cantor, Franklin D. Wolffe, Douglas P. Mueller, William E. Player, Linda S. Payne-Powell, Lynn Vandenburgh, John E. Thomas, and the law firm of Wegner, Cantor, Mueller, and Player, P.C. ("The Wegner firm"). Upon consideration of the record, the submissions of the parties, the argument of counsel and the relevant law, the court is of the opinion that the motions to dismiss are due to be granted as to defendants Herbert I. Cantor, Franklin D. Wolffe, Douglas P. Mueller, Linda S. Payne-Powell, Lynn Vandenburgh, and John E. Thomas and denied as to defendants Harold C. Wegner, William E. Player, and the Wegner firm.

Plaintiff BioCryst Pharmaceuticals, Inc. ("BioCryst") has asserted claims based on negligence, gross negligence, and breach of contract in connection with the defendants' handling of an international patent application for plaintiff. Plaintiff filed this action on October 17, 1996,

1

maintaining that the court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332. (Compl. ¶ 4). Defendants subsequently filed the motions presently before the court, in which defendants allege that this court lacks personal jurisdiction over them.

### FACTUAL SUMMARY

BioCryst is an Alabama corporation in the business of researching and marketing pharmaceutical products. (Compl. ¶ 2). Defendants are the individual members or employees of the Wegner firm and the Wegner firm, a professional corporation located in Washington, D.C (Compl. ¶ 3). The Wegner firm is or was a law firm with expertise in the area of securing intellectual property rights for unique products. (Aff. of Harold C. Wegner in Supp. of Defs.' Mot. filed Jan. 6, 1997 at Ex. 3, p.1[1]). This litigation arose as the result of an error in the filing of an international patent application for one of BioCryst's products.

From 1989 to approximately 1995, BioCryst retained the Wegner firm to secure patents on their biomedical and pharmaceutical products. (Pl.'s Evidentiary Submission in Opp'n filed Jan. 27, 1997, Ex. A, Aff. of Dr. John A. Montgomery ¶ 5[2]). In applying for an international patent on one of BioCryst's products in 1992, an employee of the Wegner firm allegedly marked North Korea instead of South Korea as the country in which a patent was requested. (Compl. ¶ 8). Defendants were unable to correct the mistake. (*Id.*) As a result, BioCryst was unable to

---

[1] Hereafter, Wegner Aff.

[2] Hereafter, Montgomery Aff. Plaintiff's Evidentiary Submission in Opposition filed Jan. 27, 1997 includes Exhibits A through I. The Exhibits relevant to this opinion are A through G, the affidavits of Dr. John A. Montgomery, Dr. Charles E. Bugg, Edmund Perry, John Spitznagel, III, Dr. Shri Niwas, Dr. John A. Secrist, and Frederick J. Dechow, respectively. Further references to these affidavits will be made as above, by stating the affiant's last name followed by the abbreviation, Aff.

obtain a patent on one of its inhibitor products in South Korea. (*Id.*)

The relationship between BioCryst and the Wegner firm began in May of 1989, when Mr. Wegner and Mr. Player of the Wegner firm traveled to BioCryst's corporate headquarters in Birmingham to meet with employees of BioCryst. (Montgomery Aff. ¶ 5). During this meeting, Mr. Wegner and Mr. Player met with several BioCryst executives and employees to discuss BioCryst's progress in the development of inhibitors of purine nucleoside phosphorylase ("PNP inhibitors") and to promote the Wegner firm's capabilities in the area of intellectual property law. (*Id.* at ¶ 6). As a result of this meeting, BioCryst hired the Wegner firm to perform its patent and intellectual property work. (*Id.*) Plaintiff maintains that Mr. Wegner also traveled to Birmingham in January of 1990, during which time he made a speech at UAB and met with certain employees of BioCryst. (Perry Aff. ¶ 4). In addition to these two meetings, Mr. Wegner made several phone calls to key employees at BioCryst concerning intellectual property law and the relationship between BioCryst and the Wegner firm. (*Id.* at ¶ 6). Despite his initial involvement with BioCryst, Mr Wegner appears not to have been significantly involved in the development of the international patent application leading to this dispute. (Wegner Aff. at p.2). Mr. Wegner at all relevant times has had no office, bank account, telephone number or address in the state of Alabama. (*Id.* at p.1).

Mr. Player was the principal attorney handling patent applications for BioCryst on PNP inhibitors, including the international patent application made the subject of this lawsuit. (Aff. of William E. Player in Supp. of Defs.' Mot. filed Jan. 6, 1997 at Ex. 2, p.1.[3]) Mr. Player has visited BioCryst's Birmingham headquarters several times, both in connection with establishing

---

[3] Hereafter, Player Aff.

BioCryst as a client and with obtaining information from BioCryst to secure pending patent applications. (*Id.*) In particular, Mr. Player has communicated extensively with BioCryst employees in attempting to obtain an international patent on the PNP inhibitor that is the subject of this litigation. (Niwas Aff. ¶ 3). Mr. Player's primary legal work in connection with securing patents for BioCryst was conducted in the District of Columbia. (Player Aff. at p.2). Mr. Player maintains that he is the only attorney at the Wegner firm to work on the patent project that is the subject of this litigation. (*Id.*) During the relevant times, Mr. Player has had no office, bank account, telephone number or address in Alabama. (*Id.*)

BioCryst paid the hourly fees and travel and lodging costs incurred by members of the Wegner firm in traveling to BioCryst's Birmingham headquarters. (Montgomery Aff. ¶ 11). BioCryst claims to have paid the Wegner firm over $374,333.71 for services rendered to BioCryst from 1989 through 1995. (*Id.*) Defendants maintain that Mr. Wegner and Mr. Player are the only members of the Wegner firm to have any contact with BioCryst or BioCryst's patent applications. (Player Aff. at p.2; Wegner Aff. at p.2). All other individual defendants claim to have no association with BioCryst and the patent application giving rise to this litigation. (Affs. in Supp. of Defs.' Mot. filed Jan. 6, 1997 at Ex. 4-8).

BioCryst has filed suit against the individual defendants and the Wegner firm for damages resulting from the Wegner firm's alleged mistake in designating North Korea rather than South Korea on the international patent application. The issue before the court is whether it may constitutionally exercise personal jurisdiction over each of the defendants.

## DISCUSSION

"In order to ascertain whether personal jurisdiction exists, a federal court sitting in a diversity case must first look at the applicable state statute, and then at the federal due process requirements." *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 670 (11th Cir. 1993) (citation omitted). Because "Alabama's long-arm statute permits personal jurisdiction predicated on minimum contacts to the extent allowed by the United States Constitution," *Cordell v. Greene Finance Co.*, 892 F. Supp. 1396, 1399 (M.D. Ala. 1995) (citation and footnote omitted), the court need only determine whether the exercise of jurisdiction comports with due process. "The due process analysis involves a two-part inquiry." *Cronin*, 980 F.2d at 670. "A defendant is constitutionally amenable to a forum's specific jurisdiction[4] if [1] it possesses sufficient minimum contacts with the forum to satisfy due process requirements, and [2] if the forum's exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993) (citation omitted), *cert. denied sub nom. Regie Nationale Des Usines Renault S.A. v. Vermeulen*, 508 U.S. 907 (1993).

Under the first part of the due process inquiry, "the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's

---

[4] Plaintiff argues that defendants are subject to the jurisdiction of this court based on contacts of certain defendants with Alabama unrelated to the dispute at issue. In light of the evidence submitted in the case thus far, the court is unwilling to find that any defendant's contacts are "substantial" or "continuous and systematic" enough to confer general jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-17 nn.8 & 9 (1984). It may well be that discovery will produce sufficient evidence to subject one or more defendants to in personam jurisdiction based on their general contacts with Alabama. At this juncture, however, the court's discussion will be confined to an analysis of the court's exercise of jurisdiction over defendants based on their contacts with Alabama related to the incident made the basis of this lawsuit.

5

cause of action or have given rise to it." *Id.* at 1546 (citations omitted). "Second the contacts must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws.'" *Id.* (citations omitted). "Third, the defendant's contacts with the forum must be 'such that the [the defendant] should reasonably anticipate being haled into court there.'" *Id.* (alteration in original) (citation omitted). Applying these factors to the facts of this case, the court is of the opinion that only defendants Harold C. Wegner, William E. Player, and the Wegner firm possess sufficient minimum contacts with Alabama such that the exercise of jurisdiction over them would satisfy due process requirements.

I.     <u>Defendant Harold C. Wegner</u>

Mr. Wegner's contacts with Alabama include at least two documented trips to Birmingham regarding BioCryst, as well as numerous phone calls and correspondence with BioCryst executives over a number of years. (Perry Aff. ¶¶ 2, 4; *See also* Spitznagel Aff. ¶ 3). Although Mr. Wegner was not BioCryst's chief contact at the Wegner firm regarding the patent application at issue, the evidence reflects that Mr. Wegner played a significant role in soliciting and maintaining BioCryst as a client over the course of the representation. (Bugg Aff. ¶ 5; Perry Aff. ¶ 6; Spitznagel Aff. ¶ 3).

Under the "minimum contacts" prong of the due process inquiry, Mr. Wegner meets the three criteria set out above for conferring specific *in personam* jurisdiction. First, Mr. Wegner's contacts with Alabama are related to and have given rise to the plaintiff's cause of action. Mr. Wegner's 1989 visit to BioCryst to solicit business and his assurances to BioCryst that the Wegner firm had capabilities in securing international patents, particularly in the Far East,

specifically resulted in BioCryst's hiring the Wegner firm to perform the task that has become the subject of this lawsuit. Mr. Wegner also meets the second criteria of the minimum contacts analysis. By soliciting BioCryst as a client and holding his firm out as specializing in intellectual property law, Mr. Wegner has purposefully availed himself of the privilege of conducting activities within the forum. Particularly persuasive are the instances of Mr. Wegner's physical presence in the state. Although physical presence within the forum is not dispositive of the minimum contacts analysis, physical presence "provides strong, objective evidence of sufficient contacts." *Duke v. Young*, 496 So.2d 37, 39 (Ala. 1986). Under the third criteria, Mr. Wegner should reasonably anticipate being haled into court in this forum as a result of his activities in the state and his substantial contact with employees of BioCryst. (Bugg Aff. ¶¶ 4-5; Perry Aff. ¶¶ 4, 6, 7; Spitznagel Aff. ¶ 3)

The court's exercise of personal jurisdiction over Mr. Wegner must also comport with traditional notions of "fair play and substantial justice." *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Factors to consider in analyzing this prong of the due process inquiry include the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477; *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980). [T]hese considerations may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King*, 471 U.S. at 477.

In the present case, Mr. Wegner contends that the burden in litigating this lawsuit in Alabama is substantial. The court notes that modern methods of transportation and communication reduce this burden significantly. *See World-Wide Volkswagen*, 444 U.S. at 292-93. The severity of the burden is also mitigated by Mr. Wegner's past amenability to traveling to this state to conduct business. The forum state has a significant interest in litigating this dispute considering its interest in redressing the grievances of an Alabama corporation. Furthermore, BioCryst has a significant interest in obtaining relief in the forum state where BioCryst headquarters is located and where the impact of the alleged wrong was felt. Finally, the most efficient resolution of the controversy favors litigating this dispute in Alabama because of BioCryst's presence in Alabama and because the bulk of the witnesses and evidence pertaining to the relevant patent application are located in Alabama. Together, these factors satisfy the second prong of the due process analysis and weigh in favor of subjecting Mr. Wegner to the personal jurisdiction of this court.

II.     <u>Defendant William E. Player</u>

Mr. Player's contacts with this forum are much more substantial than Mr. Wegner's and therefore subject him to the jurisdiction of this court. In addition to his initial visit to BioCryst headquarters in 1989 with Mr. Wegner, Mr. Player has traveled to Birmingham on BioCryst business on several occasions. (Player Aff. at 1). Mr. Player has also communicated extensively with BioCryst employees regarding the patent application giving rise to this lawsuit. (Montgomery Aff. ¶ 8; Perry Aff. ¶ 6; Niwas Aff. ¶ 3; Dechow Aff. ¶ 3). These activities establish that Mr. Player has had the requisite "minimum contacts" with this forum to confer

personal jurisdiction.[5] For the same reasons as stated above, this court's exercise of jurisdiction over Mr. Player comports with traditional notions of fair play and substantial justice.

III.  Defendant the Wegner firm

The Wegner firm, a professional corporation, is also subject to this court's personal jurisdiction. Under a minimum contacts analysis, Mr. Wegner and Mr. Player's activities as partners and shareholders in the Wegner firm suffice to subject the Wegner firm to this court's jurisdiction. The Wegner firm has solicited business in this state and derived substantial revenues from its Alabama clients. The Wegner firm's purposeful contacts with BioCryst have given rise to the current action. Therefore, the Wegner firm has purposely availed itself of the privilege of conducting activities within this forum, and should reasonably anticipate being haled into court here.

IV.  The Remaining Individual Defendants

Finally, the court holds that the remaining individual defendants do not possess sufficient minimum contacts with Alabama to satisfy due process requirements. The remaining individual

---

[5] Defendants argue that personal jurisdiction does not exist in this case because the act or omission giving rise to the suit did not consist of fraud, an intentional tort, or an action arising specifically out of the defendant's conduct within the forum state. They proceed to distinguish this case from *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996), in which personal jurisdiction was established where Michigan attorneys conducted negligent estate planning services outside the forum state with the intent that the documents would be filed within the forum state of Florida. Although this case is technically distinguishable from *Giarmarco* because defendants never filed or intended to file any documents in Alabama, the court finds defendants argument ultimately unpersuasive. The location of the filing office or agency is not dispositive of the issue. Also relevant is the fact that the anticipated effects of filing the patents would affect primarily an Alabama corporation. Second, this case is different from *Giarmarco* because of defendants' physical presence within the state. *See generally, Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 393 (11th Cir. 1988)(requisite minimum contacts to confer personal jurisdiction found where out-of-state defendants made purposeful journey to Florida to conduct important contract negotiations).

defendants have never traveled to Alabama in connection with BioCryst or BioCryst's patent applications. The evidence does not show that these individuals have directed significant communications toward the plaintiff that would subject them to the personal jurisdiction of this court. There is no evidence before the court that the remaining named defendants had anything to do with the representation of BioCryst. The remaining defendants have not purposely availed themselves of the privilege of conducting activities within the forum and have not invoked the benefits and protections of its laws. There is no reason why these individuals should reasonably anticipate being haled into court by BioCryst in Alabama. Particularly significant to a minimum contacts analysis regarding the remaining defendants is their lack of physical presence in the state. Thus, the motions to dismiss filed by defendants Herbert I. Cantor, Franklin D. Wolffe, Douglas P. Mueller, Linda S. Paine-Powell, Lynn Vandenburgh, and John E. Thomas are due to be granted.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that the motions to dismiss for lack of personal jurisdiction filed on behalf of Harold C. Wegner, William E. Player, and the Wegner firm are due to be denied. The motions to dismiss for lack of personal jurisdiction filed on behalf of Herbert I. Cantor, Franklin D. Wolffe, Douglas P. Mueller, Linda S. Paine-Powell, Lynn Vandenburgh, and John E. Thomas are due to be granted. An Order reflecting the court's decision will be entered contemporaneously herewith.

**DONE** this 22nd day of September, 1997.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge